UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
                    *Plaintiff*,

v.

ALASKA AIR GROUP, INC.

and

VIRGIN AMERICA INC.,
                    *Defendants*.

## FINAL JUDGMENT

Whereas, Plaintiff United States of America ("United States") filed its Complaint on December 6, 2016, the United States and Defendants, Alaska Air Group, Inc. ("Alaska") and Virgin America Inc. ("Virgin"), by their respective attorneys, have consented to entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issues of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, this Final Judgment requires Defendants to undertake certain actions and refrain from certain conduct for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the actions and conduct restrictions described below can and will be undertaken, and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any provisions contained below;

NOW, THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. Jurisdiction

The Court has jurisdiction over the subject matter of this action and Defendants. The Complaint states a claim upon which relief can be granted against Defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II. Definitions

As used in this Final Judgment:

A.   "Alaska" means Alaska Air Group, Inc., a Delaware corporation headquartered in Seattle, Washington, its successors and assigns, its Affiliates, and its subsidiaries or divisions, and their respective directors, officers, managers, agents, and employees.

B.   "Alaska/American Codeshare Agreement" means the Amended and Restated Codeshare Agreement entered into between Alaska and American, dated February 15, 2015, and all predecessors, exhibits, schedules and amendments thereto.

C.   "Alaska/American Overlap Routes" means any routes between two cities in the United States on which Alaska and American both provide nonstop scheduled air passenger service. For purposes of this definition only, the city that an airport serves will be determined by the City Market ID assigned to each airport by the U.S. Department of Transportation in the

Airline Origin and Destination Survey ("DB1B"), and airports with the same City Market ID will be considered to serve the same city, except the following airports will not be considered to serve the same city as any other airport: (1) Los Angeles International Airport and (2) Norman Y. Mineta San Jose International Airport. The routes covered by this definition may change over the term of this Final Judgment as Alaska and American adjust their respective schedules. The Alaska/American Overlap Routes as of December 6, 2016 are listed in Appendix A for illustrative purposes.

   D. "American" means American Airlines Group Inc., a Delaware corporation headquartered in Fort Worth, Texas, its successors and assigns, and its subsidiaries, divisions, groups and Affiliates, and their respective directors, officers, managers, agents, and employees.

   E. "Affiliate" means an entity that is related to another entity by one owning shares of the other, by common ownership, or by other means of control, and includes any airline that operates Flights for Alaska or American pursuant to a capacity purchase agreement, but such airline shall only be deemed an Affiliate with respect to such Flights.

   F. "Codeshare Agreement" means a contract between two airlines that allows them to market one another's flights by placing their respective unique, identifying codes on those flights. Each airline's code is established by the International Air Transportation Association.

   G. "Connecting Itinerary" means a route within the United States with at least one intermediate stop at any airport between the origination and destination airports.

   H. "Defendants" means Alaska and Virgin, and any successor or assignee to all or substantially all of the business or assets of Alaska or Virgin.

   I. "US/AA Divestiture Assets" means all rights and interests held by Defendants in the two gates at Dallas Love Field ("DAL"), eight slots at Washington Reagan National Airport

("DCA"), and 12 slots at New York LaGuardia Airport ("LGA"), acquired by Virgin pursuant to the Final Judgment entered in *United States v. US Airways Group, Inc.*, Case No. 1:13-cv-01236 (CKK) (Dkt. No. 170) (D.D.C. Apr. 25, 2014).

J. "Flight" means scheduled air passenger service, without any intermediate stops, between an origin airport and destination airport, both within the United States.

K. "Future Alaska-American Overlap Route" means any Alaska-American Overlap Route created by Defendants or American commencing service between two cities after the consummation of the Transaction.

L. "Key Alaska Airports" means each of the following airports: (1) Portland International Airport ("PDX"); (2) Seattle-Tacoma International Airport ("SEA"); (3) San Francisco International Airport ("SFO"); and (4) Ted Stevens Anchorage International Airport ("ANC").

M. "Key American Airports" means each of the following airports: (1) Charlotte Douglas International Airport ("CLT"); (2) Chicago Midway International Airport ("MDW"); (3) Chicago O'Hare International Airport ("ORD"); (4) Dallas/Fort Worth International Airport ("DFW"); (5) Dallas Love Field ("DAL"); (6) Fort Lauderdale-Hollywood International Airport ("FLL"); (7) John F. Kennedy International Airport ("JFK"); (8) Miami International Airport ("MIA"); (9) New York LaGuardia Airport ("LGA"); (10) Philadelphia International Airport ("PHL"); (11) Phoenix Sky Harbor International Airport ("PHX"); and (12) Washington Reagan National Airport ("DCA").

N. "LAX" means Los Angeles International Airport.

O. "Market" means to sell tickets for a Flight pursuant to a Codeshare Agreement, either as a standalone Flight or as part of a Connecting Itinerary.

P.     "Transaction" means the transaction referred to in the Agreement and Plan of Merger by and among Alaska, Alpine Acquisition Corp., a wholly owned subsidiary of Alaska, and Virgin, dated April 1, 2016.

Q.     "Virgin" means Virgin America Inc., a Delaware corporation headquartered in Burlingame, California, its successors and assigns, and its subsidiaries, divisions, groups, Affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

R.     "Virgin/American Overlap Routes" means any routes on which Virgin and American both provide nonstop scheduled air passenger service as of December 6, 2016. The Virgin/American Overlap Routes are listed in Appendix B and will not change over the term of this decree.

### III. Applicability

A.     This Final Judgment applies to Alaska and Virgin, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

### IV. Prohibited Conduct

A.     Beginning sixty (60) calendar days after consummation of the Transaction, Defendants shall not directly or indirectly, under the Alaska/American Codeshare Agreement or otherwise:

    1.     Market any American Flight serving a Virgin/American Overlap Route, or permit American to Market any Alaska Flight serving a Virgin/American Overlap Route;

5

  2. Market any American Flight serving an Alaska/American Overlap Route, or permit American to Market any Alaska Flight serving an Alaska/American Overlap Route;

  3. Market any American Flight that originates or terminates at any Key Alaska Airport, or permit American to Market any Alaska Flight that originates or terminates at any Key American Airport; and

  4. Market any American Flight, or permit American to Market any Alaska Flight, serving any route between LAX and a Key Alaska Airport or a Key American Airport.

B. Defendants shall not directly or indirectly sell, trade, lease, or sub-lease any of the US/AA Divestiture Assets without the prior written consent of the United States. Defendants shall not directly or indirectly transfer any interest in the US/AA Divestiture Assets to American or permit American to use the US/AA Divestiture Assets.

C. Notwithstanding Section IV.B, nothing in this Final Judgment shall prevent Defendants from (i) engaging in one-for-one trades of slots at different times at the same airport, (ii) engaging in one-for-one trades of gates at the same airport, (iii) continuing the subleases of the US/AA Divestiture Assets already in place as of December 6, 2016; (iv) permitting any airline to use any slots or airport gates if required by lawful directive of an airport authority or any other governmental body; or (v) permitting any airline to use any slots or airport gates on an ad hoc basis to accommodate a safety, security, or exigent operational need.

### V. Required Conduct

A. Within thirty (30) calendar days of entry of this Final Judgment, Defendants shall certify to the United States that they have informed (i) all of Defendants' personnel involved in

the implementation, operation, and enforcement of the Alaska/American Codeshare Agreement and (ii) all of Defendants' officers and directors of the obligations set forth in this Final Judgment.

    B.    Within sixty (60) calendar days of the creation of a Future Alaska/American Overlap Route, Defendants shall comply with the prohibition set forth in Section IV.A(2) on that Future Alaska/American Overlap Route.

    C.    Defendants shall certify to the United States annually on the anniversary date of the entry of this Final Judgment that Defendants have complied with all of the provisions of this Final Judgment.

    D.    Defendants shall notify the United States annually on the anniversary date of the entry of this Final Judgment of:

1. the identity of routes on which Alaska Markets American Flights, and separately for each route, whether Alaska Markets American Flights on a standalone basis, as part of a Connecting Itinerary, or both;

2. the number of passengers that purchased tickets pursuant to the Alaska/American Codeshare Agreement or any other Codeshare Agreement between Alaska and American for American Flights Marketed by Alaska during the prior calendar year; and

3. the amount of revenue that Alaska received during the previous calendar year from American pursuant to the Alaska/American Codeshare Agreement.

    E.    If Defendants amend the Alaska/American Codeshare Agreement or enter into any new or restated Codeshare Agreement with American, Defendants shall provide a copy of such amendment or agreement to the United States at least thirty (30) calendar days in advance

of such amendment or agreement becoming effective, unless the United States agrees in writing that Defendants may make such agreement(s) or amendment(s) effective at an earlier date. Defendants shall satisfy the obligations set forth in parts A, C, D, and E of this Section by providing the required certifications, notifications, and copies of agreements to the Chief of the Transportation, Energy, and Agriculture Section, Antitrust Division, U.S. Department of Justice.

### VI. Compliance and Inspection

A.    For the purposes of determining or securing compliance with this Final Judgment, or of any related orders, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

    1.    access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

    2.    to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.   Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment.

C.   No information or documents obtained by the means provided in this Section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.   If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

### VII. No Limitation on Government Rights

Nothing in this Final Judgment shall limit the right of the United States to investigate and bring actions as necessary to prevent or restrain violations of the antitrust laws relating to the Alaska/American Codeshare Agreement, or any past, present, or future conduct, policy, practice or agreement of Defendants.

### VIII. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

### IX. Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

### X. Public Interest Determination

The entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon, and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest

DATED: June 23, 2017

                                                Court approval subject to the
                                                Antitrust Procedures and Penalties Act,
                                                15 U.S.C. § 16

_/s/ Reggie B. Walton_
United States District Judge

## Appendix A
Alaska/American Domestic U.S. Overlap Routes as of December 6, 2016

| *Non-Directional Origin and Destination Pairs* | |
|---|---|
| **Origin** | **Destination** |
| Ted Stevens Anchorage International Airport | Los Angeles International Airport |
| Ted Stevens Anchorage International Airport | Phoenix Sky Harbor International Airport |
| Chicago O'Hare International Airport | Portland International Airport |
| Chicago O'Hare International Airport | Seattle – Tacoma International Airport |
| Dallas/Fort Worth International Airport | Portland International Airport |
| Dallas/Fort Worth International Airport | Seattle – Tacoma International Airport |
| Los Angeles International Airport | Portland International Airport |
| Los Angeles International Airport | Salt Lake City International Airport |
| Los Angeles International Airport | Seattle – Tacoma International Airport |
| John F. Kennedy International Airport | Seattle – Tacoma International Airport |
| Philadelphia International Airport | Seattle – Tacoma International Airport |
| Phoenix Sky Harbor International Airport | Seattle – Tacoma International Airport |
| Phoenix Sky Harbor International Airport | Portland International Airport |
| Ronald Regan Washington National Airport | Los Angeles International Airport |
| Baltimore – Washington International Airport | Los Angeles International Airport |
| Newark Liberty International Airport | Seattle – Tacoma International Airport |
| John F. Kennedy International Airport | San Diego International Airport |
| Newark Liberty International Airport | San Diego International Airport |
| Miami International Airport | Seattle – Tacoma International Airport |
| Fort Lauderdale–Hollywood International Airport | Seattle – Tacoma International Airport |
| Washington Dulles International Airport | Los Angeles International Airport |

## Appendix B
### Virgin/American Domestic U.S. Overlap Routes

| *Non-Directional Origin and Destination Pairs* | |
|---|---|
| **Origin** | **Destination** |
| Boston Logan International Airport | Los Angeles International Airport |
| Chicago O'Hare International Airport | Los Angeles International Airport |
| Dallas Love Field Airport | Los Angeles International Airport |
| Dallas/Fort Worth International Airport | Los Angeles International Airport |
| Fort Lauderdale – Hollywood International Airport | Los Angeles International Airport |
| Los Angeles International Airport | Miami International Airport |
| Honolulu International Airport | Los Angeles International Airport |
| McCarran International Airport | Los Angeles International Airport |
| Los Angeles International Airport | Washington Dulles International Airport |
| Los Angeles International Airport | Ronald Regan Washington National Airport |
| Los Angeles International Airport | John F. Kennedy International Airport |
| Los Angeles International Airport | Newark Liberty International Airport |
| Los Angeles International Airport | Orlando International Airport |
| Los Angeles International Airport | Seattle – Tacoma International Airport |
| Dallas Love Field Airport | San Francisco International Airport |
| Dallas/Fort Worth International Airport | San Francisco International Airport |
| Fort Lauderdale – Hollywood International Airport | San Francisco International Airport |
| Miami International Airport | San Francisco International Airport |
| John F. Kennedy International Airport | San Francisco International Airport |
| Los Angeles International Airport | San Francisco International Airport |
| Chicago O'Hare International Airport | San Francisco International Airport |
| Dallas Love Field Airport | Ronald Regan Washington National Airport |
| Dallas/Fort Worth International Airport | Ronald Regan Washington National Airport |
| Dallas Love Field Airport | LaGuardia Airport |
| Dallas/Fort Worth International Airport | LaGuardia Airport |
| Dallas Love Field Airport | McCarran International Airport |
| Dallas/Fort Worth International Airport | McCarran International Airport |
| Fort Lauderdale – Hollywood International Airport | John F. Kennedy International Airport |
| Miami International Airport | John F. Kennedy International Airport |
| Los Angeles International Airport | Kahului Airport |
| McCarran International Airport | John F. Kennedy International Airport |